UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE: BONITA B. PHILLIPS a/k/a
Bonnie B. Phillips,

                    Debtor.
_____

JEFFREY S. PHILLIPS,

                    Appellant,

vs.                                     Case No.  2:10-cv-212-FtM-29
                                        Bankr. No. 9:06-bk-05685-ALP
                                        Adv. No. 9:07-ap-00181-ALP

EPIC AVIATION,

                    Appellee.
_____

### OPINION AND ORDER

This  matter  comes  before  the  Court  on  appeal  from  the

Bankruptcy  Court's  August  10,  2009,  Findings  of  Fact  and

Conclusions  of  Law  (Doc. #1-2)[1],  Final  Judgment  (Doc. #1-3),  and

Order  Denying  Defendant's  Motion  for  Reconsideration  of  the

Findings of Fact and Conclusion of Law, and Final Judgment (Doc.

#1-4) in an adversary proceeding initiated by EPIC Aviation, LLC

_____

[1]The  Court  will  hereinafter  cite  documents  filed  with  the
District  Court  as  "Doc.",  documents  filed  in  the  Bankruptcy  case  as
"Bankr. Doc.",  and  documents  filed  in  the  Adversary  proceeding  as
"Adv. Doc.".  Copies  of  the  relevant  documents  are  included  in  the
record  transmitted  by  the  Bankruptcy  Court,  and  the  undersigned
takes  judicial  notice  of  the  underlying  dockets  as  available
through PACER.

(Epic or appellee)[2] against Jeffrey S. Phillips (Phillips, Debtor, or appellant).  Appellant filed an Initial Brief (Doc. #12), Epic filed a Response Brief (Doc. #19), and appellant filed a Reply Brief (Doc. #25).  After examination of the briefs and record, the Court finds that the decisional process would not be significantly aided by oral argument.  Therefore, appellant's Request for Oral Argument (Doc. #24) will be denied.

**I.**

On December 29, 2006, Phillips filed a voluntary petition under Chapter 7 of the Bankruptcy Code, along with his Statement of Financial Affairs (SOFA).  On January 31, 2007, Phillips filed an Amendment to his SOFA, and on February 9, 2007, he filed an amendment to his Schedule F.  (9:06-bk-07489-ALP, Bankr. Docs. ## 22, 26.)  On April 17, 2007, a request for joint administration was granted and all future pleadings were directed to be filed in the lead case, 9:06-bk-05685-ALP.[3]  On November 7, 2007, Bonita B. Phillips was discharged.  (9:06-bk-05685-ALP, Bankr. Doc. #112.)[4]

---

[2]Originally, Cessna Finance Corporation and Textron Financial Corporation were also plaintiffs in the adversary proceeding, however both parties voluntarily dismissed their claims with prejudice.

[3]Phillips filed his Chapter 7 petition two months after his wife Bonita B. Phillips filed her petition.  Therefore, Case No. 9:06-bk-07489-ALP was consolidated with the lead case of Bonita B. Phillips, 9:06-bk-05685-ALP.

[4]Any future references to "Bankr. Doc." are references to the documents filed in Case No. 9:06-bk-05685-ALP only.

Epic filed a proof of claim against Phillips based on a 2004 Oregon judgment.  On May 7, 2007, Epic filed a five-count Complaint (Bankr. Doc. #72) in an adversary proceeding objecting to Debtor's discharge.  Epic alleged that Phillips made false oaths, in violation of § 727(a)(4)(A); made fraudulent transfers in the year prior to filing, in violation of § 727(a)(2)(A); failed to satisfactorily explain the loss or diminution of estate assets, in violation of § 727(a)(5); failed to maintain adequate business records, in violation of § 727(a)(3); and committed similar acts in connection with another bankruptcy case, in violation of § 727(a)(7).  Phillips filed an Answer (Adv. Doc. #14) denying most of the allegations.  On July 8, 2008, debtor filed a Motion for Summary Judgment (Adv. Doc. #102), which was denied after a hearing.  (Adv. Doc. #112.)

A two day evidentiary hearing was conducted.  On August 10, 2009, the Bankruptcy Court issued its Findings of Fact and Conclusions of Law, In re Phillips, 418 B.R. 445 (Bankr. M.D. Fla. 2009)[5] and a Final Judgment, In re Phillips, 2009 Bankr. LEXIS 3468 (Bankr. M.D. Fla. Aug. 10, 2009)[6] denying Phillips a discharge.  Reconsideration was denied.  In re Phillips, 2010 Bankr. LEXIS 626,

---

[5](Adv. Doc. #186.)

[6](Adv. Doc. #187.)

2010 WL 769828 (Bankr. M.D. Fla. Feb. 18, 2010)[5].  The Bankruptcy

Court found that Phillips was a sophisticated, educated

businessperson, Phillips, 418 B.R. at 450, and introduced its

Findings of Fact section with the following observation:

> At trial, EPIC produced evidence and elicited
> testimony regarding a variety of incidents that took
> place in connection with the Debtor's bankruptcy case and
> with the Center case. At times, EPIC strayed from the
> facts specifically pleaded in the Complaint, which the
> Court allowed so that all relevant facts might be
> considered to generally paint the picture of the Debtor's
> acts in connection with these bankruptcies. [n.1] The
> Court will make its findings incident by incident,
> although each incident may relate to more than one count
> in the Complaint.
>
> n.1 The Court specifically denied the
> Plaintiff's *ore tenus* motions on the morning
> of the trial, several times during trial, and
> at the end of trial, to amend the Complaint.

Id. at 451 & n.1.  The Bankruptcy Court made detailed findings of

fact as to the fifteen incidents addressed in the evidence,

including those which had not been specifically plead in the

Complaint.  Id. at 451-59.  The Bankruptcy Court concluded that

"there were several substantial assets and transfers that were not

disclosed anywhere in the Debtor's schedules or statements."  Id.

at 459.

In its Conclusions of Law, the Bankruptcy Court began by

denying leave to amend the Complaint "to add various factual

---

[5](Adv. Doc. #186.)

-4-

allegations that might support denial of a discharge." Id. at 459.
The Bankruptcy Court concluded:

> At trial, the Court decided to allow the Plaintiff to introduce evidence about matters not included in the pleadings. (Trial Tr. 202:9-20.) The Court did not rule that the pleadings would be amended, only that evidence would be admitted and considered by the Court. If the evidence had proven substantive, the Court would consider amending the pleadings to conform to the evidence. However, as explained herein, the admitted evidence that falls outside the pleadings does not present a basis for relief, and therefore, the Court will not amend the pleadings.

Id. at 460.  The Bankruptcy Court found in favor of Phillips as to Counts II, III, IV, and V, and no appeal was filed by Epic as to those determinations.  As to Count I, Epic sought a denial of discharge based on the following false oaths or false accounts by Debtor in his Chapter 7 proceeding:

> a.  Failing to accurately account for the whereabouts or disposition of a Rolex watch;
>
> b.  Failing to disclose a $50,000 transaction with Chris Cioffi within one year of the filing of the bankruptcy case or to properly account for the disposition of the proceeds of that transaction;
>
> c.  Failing to disclose an interest the Debtor had in a real estate development known as the "Englewood Project" within one year of the filing of the bankruptcy case;
>
> d.  Failing to disclose approximately $70,000 in loan repayments within one year of the filing of the bankruptcy case to an affiliate known as Jet 1, Inc. ("Jet").
>
> e.  Failing to disclose approximately $70,000 in cash transfers within one year of the filing of the bankruptcy case not in the ordinary course of business to Jet.

f.  Failing to disclose transfers in excess of $1,000,000 to Jet for the purpose of concealing those funds from the Defendant's creditors, and the existence of that transfer was concealed from the date that it occurred through the date of the filing of this Chapter 7 case.

g.  Failing to disclose an interest in a leasehold and in a deposit held by a landlord.

h.  Failing to disclose loan repayments within one year of the filing of the bankruptcy case to an affiliate known as Jet 1 Charter, Inc. ("Charter").

i.  Failing to disclose cash transfers within one year of the filing of the bankruptcy case not in the ordinary course of business to Charter.

j.  Failing to disclose loan repayments within one year of the filing of the bankruptcy case to an insider, Jim Malone.

k.  Failing to disclose transfers not in the ordinary course of business within one year of the filing of the bankruptcy case to Jim Malone.

l.  Failing to accurately disclose $42,000 in payments to attorneys, all of which occurred within one year of the filing of the bankruptcy case, or to honestly account in the bankruptcy Statement of Financial Affairs fees paid to attorneys for advice concerning relief under the Bankruptcy Code.

m.  Failing to accurately account for the true nature and extent of assets of affiliates or to truthfully account to the Chapter 7 trustee with respect to the assets, liabilities and prospects of affiliate entities.

n.  Failing to accurately account for gambling debts and charitable contributions.

o.  Failing to accurately disclose the transfer, within one year of the filing of the bankruptcy case, of $55,000 to the Defendant's IRA.

p.  Failing to accurately disclose the true extent of the Defendant's assets, liabilities and credit facilities.

q.  Failing to accurately disclose all transactions in which he had an interest or which occurred for his benefit.

r.  Failing to accurately disclose memberships in exclusive country clubs or the fact that those memberships were in the process of being liquidated.

s.  To the extent that any of the foregoing occurred prior to December 29, 2005, the Defendant concealed the occurrence of those events through, to, and beyond December 29, 2006, with the intent to conceal those events.

(Adv. Doc. #1, ¶5a-s.)  The Bankruptcy Court ruled in favor of the Phillips on most of these allegations, including all of the allegedly fraudulent transfers, finding that Epic had not met its evidentiary burden.  Phillips, 418 B.R. at 452, 462-63.  As to its finding that "there were several substantial assets and transfers that were not disclosed anywhere in the Debtor's schedules or statements," id. at 459, the Bankruptcy Court specifically found five non-disclosures to have been material omissions made with fraudulent intent: (1) various transfers to and from Debtor's corporations, which were not disclosed in Question 10 of the SOFA; (2) the transfer of Debtor's interest in the Englewood Project to Cioffi for $50,000, which was not disclosed in Question 10 of the SOFA; (3) $23,500 paid to attorneys, which was not disclosed in Question 10 of the SOFA; (4) Debtor's interest in a commercial lease and security deposit involving Jet Charter, which was not disclosed in Question 3 of Schedule B - Personal Property; and (5) listing $0 in entertainment expenses on line 9 of Schedule J -

Current Expenditures. Id. at 451-54, 463-64. Phillips was denied a discharge because the Bankruptcy Court found he had violated 11 U.S.C. § 727(a)(4)(A) by knowingly and fraudulently making a false oath or account in connection with the Chapter 7 proceeding.

Debtor sought reconsideration, Adv. Doc. #190, and the Bankruptcy Court entered an Order Denying Defendant's Motion for Reconsideration of the Findings of Fact and Conclusion of Law, and Final Judgment (Adv. Doc. #194) on February 18, 2010. Phillips filed a timely Notice of Appeal (Adv. Doc. #196).

## II.

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. In re Colortex Indus., Inc., 19 F.3d 1371, 1374 (11th Cir. 1994). The legal conclusions of the bankruptcy court are reviewed de novo, while findings of fact are reviewed for clear error. In re Globe Mfg. Corp., 567 F.3d 1291, 1296 (11th Cir. 2009). On appeal, the court defers to factual determinations by the bankruptcy court unless they are clearly erroneous. In re Davis, 314 F.3d 567, 570 (11th Cir. 2002). A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed." Crawford v. W. Electric Co., Inc., 745 F.2d 1373, 1378 (11th Cir. 1984)(citing United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). Mixed questions of

law and fact are reviewed *de novo*.  In re Piper Aircraft Corp., 244 F.3d 1289, 1295 n.2 (11th Cir. 2001).

The primary benefit to a Chapter 7 bankruptcy proceeding is that the debtor receives a "fresh start" by the financial discharge received.   This privilege is reserved for the "honest but unfortunate debtor," Grogan v. Garner, 498 U.S. 279, 287 (1991), and may be denied to the dishonest debtor.   11 U.S.C. § 727(a). In this case, Phillips was denied a discharge because the Bankruptcy Court found he had violated 11 U.S.C. § 727(a)(4)(A). Under this provision, a discharge shall be granted to a debtor, unless "the debtor knowingly and fraudulently, in or in connection with the case - - (A) made a false oath or account; . . ."  11 U.S.C. § 727(a)(4)(A).  To prevail on a claim under § 727(a)(4)(A), plaintiff "must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." Stamat v. Neary, No. 09-3448, ____ F.3d ____, 2011 WL 1045839, *3 (7th Cir. Mar. 24, 2011).

"Full disclosure of assets and liabilities in the schedules required to be filed by one seeking relief under Chapter 7 is essential, because the schedules 'serve the important purpose of insuring that adequate information is available for the Trustee and

creditors without need for investigation to determine whether the information provided is true.'" In re Beaubouef, 966 F.2d 174, 179 (5th Cir. 1992)(quoting Messing v. Urban, 130 B.R. 340, 344 (Bankr. M.D. Fla. 1991)). A discharge should not be granted where "the debtor knowingly and fraudulently made a false oath or account." In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984)(citing In re Raiford, 695 F.2d 521, 522 (11th Cir. 1983)). Deliberate omissions, such as a "knowing and fraudulent omission from a sworn Statement of Affairs or schedule may constitute a false oath", may also result in the denial of a discharge. Id. at 618 & n.3 (citation omitted). The false oath must be fraudulent and material, Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991), and made intentionally, In re Rudolph, 233 F. App'x 885, 889 (11th Cir. 2007)(citing In re Cutignola, 87 B.R. 702, 706 (Bankr. M.D. Fla. 1988)). The Eleventh Circuit has stated

> that detriment to the creditor need not be shown in order to bar discharge for making a false oath. [ ] The subject matter of a false oath is "material," and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property. [ ] See also Metheany v. United States, 365 F.2d 90, 93 (9th Cir. 1966) ("material matter" refers not only to the main fact which is subject to inquiry, but also to any fact or circumstance which tends to corroborate the proof adduced to establish the main fact). The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding; such a defense is specious. [ ] It makes no difference that he does not intend to injure his creditors when he makes a false statement. Creditors are

> entitled to judge for themselves what will benefit, and what will prejudice, them.  [ ]  The veracity of the bankrupt's statements is essential to the successful administration of the Bankruptcy Act.

In re Chalik, 748 F.2d at 618 (internal citations omitted).  The "repeated nature of non-disclosures and improper disclosures" can support a finding of fraudulent intent.  In re Protos, 322 F. App'x 930, 933 (11th Cir. 2009).

## III.

On appeal, Debtor does not deny that the information was in fact omitted, as found by the Bankruptcy Court.  Debtor argues, however, that he had no obligation to disclose most of the omitted information, and even if there was an obligation, his omissions were not intentional or fraudulent.  Debtor also argues that the Bankruptcy Court should not have considered the $0 entertainment expenses, and should not have summarily concluded it constituted a false and material statement.  Finally, debtor argues that Epic was barred by collateral estoppel and *res judicata* from challenging his discharge after its co-plaintiffs dismissed their identical claims with prejudice.  (Doc. #12, pp. i-ii; 8-19.)[6]

---

[6]While Phillips raises six separately numbered arguments at pages 3-8, he lists ten issues earlier in his brief on pages v-vi. The extra issues seem to be embedded at various places in the six arguments.  To the extent they are not, these issues have been abandoned, or alternatively, are without merit.

## A.   Transfers To and From Debtor's Corporations

Debtor asserts that the Bankruptcy Court denied discharge because of the failure to list five "technical matters," including various transfers to and from his corporations.  (Doc. #12, pp. 8, 12-14.)   Phillips argues that these transfers were within his "subjective" ordinary course of business and financial affairs, that it is "impossible" to conclude he deliberately omitted the information or acted with an intent to defraud, that the transfers were in fact disclosed to the Chapter 7 trustee, and that it was not established that any transfers involved the individual funds of Debtor.  (Doc. #12, pp. 3-4, 13-14.)

The Bankruptcy Court made the following findings of fact concerning these transfers:

> The Debtor was the principal of numerous corporate entities. These corporate entities, while maintaining separate books, transferred funds between entities using a rather curious accounting method.  In the ordinary course of business, when funds were transferred from one entity to another, they would pass through the Debtor's personal account.  Certain corporate expenses were also charged to Mr. Phillip's personal account.  Such transfers occurred within the year prior to filing.  However, it is not clear which, if any, of these transfers involved the transfer of funds from the Debtor individually to any of the insider corporate entities, and which transfers were, in essence, transfers between corporate entities.  [ ] There were also numerous transfers *to* the Debtor from the corporate accounts.  No calculations were presented to the Court that explained the net result of these transfers--whether money was generally flowing to the Debtor or from the Debtor, or whether all these transfers were in effect transfers between corporations. The Debtor's interest in the various corporate entities was disclosed in his

schedules, but no reference regarding these transfers, however vague, was made in the schedules or statements.

The Plaintiff failed to show that these transfers involved the transfer of assets from the Debtor to other entities, or that these transfers were no more than a novel, but improper, bookkeeping method. As it is not the role of the Court to undertake forensic accounting, but to review the evidence presented by the parties, the Court cannot conclude that it has been established by a preponderance of the evidence that the Debtor transferred funds within a year of filing to an insider corporation. However, it is clear that these transfers, whether a bookkeeping method or actual transfers, were not properly disclosed.

Phillips, 418 B.R. at 451-52 (internal record citation omitted)(emphasis in original). The Bankruptcy Court then made the following conclusions of law:

The Plaintiff established at trial the existence of numerous substantial transfers between the Debtor and various corporations controlled by the Debtor within the two years prior to the filing. Whether these transfers were transfers of property of the debtor within a year of filing has not been established. The accounting methods of the Debtor's corporations do not lend themselves to transparency, and the testimony and evidence presented by the Plaintiff did little to elucidate. Nevertheless, while there is insufficient evidence to establish fraudulent transfer for purposes of denial of discharge under § 727(a)(2)(A), it was clearly established that there were transfers of the Debtor's interests outside the ordinary course of business. While it may have been common for these companies to lend money to each other, the ordinary course of the Debtor's business cannot be considered so broad as to encompass all transactions, however large, involving money. The Debtor was in the charter air business. While he may warrant the title entrepreneur, that title does not shield him from the obligation to disclose the large sums flowing in and out of his accounts. The failure to disclose these transfers in the Debtor's schedules and statements, in *any* way, was clearly a material omission.

Phillips, 418 B.R. at 462-63 (emphasis in original).  This omission related to Question 10 of the SOFA, which required Phillips to list all property transferred "other than property transferred in the ordinary course of the business or financial affairs of the debtor" within 2 years of the filing.  Id. at 462.

The Court concludes that the Bankruptcy Court's conclusions of law with respect to these transfers are not supported by its findings of fact as to these transfers.  The Bankruptcy Court found, as quoted above, that it was "not clear which, if any, of these transfers involved the transfer of funds from the Debtor individually to any of the insider corporate entities," and that "Plaintiff failed to show that these transfers involved the transfer of assets from the Debtor to other entities, . . ."  Id. at 452.  With these factual findings, it cannot be "clearly established that there were transfers of the Debtor's interests outside the ordinary course of business."  Id. at 462-63.  Since Epic had not established transfers of plaintiff's assets, it had not established transfers which needed to be disclosed in Question 10.  The Court concludes that the Bankruptcy Court's finding, that the failure to disclose these transfers in response to Question 10 was a basis to deny discharge under § 727(a)(4)(A), was erroneous.  Appellant's other arguments as to this issue are without merit.

**B.  Real Estate Transaction With Christopher Cioffi**

Debtor argues that he had no obligation to list the transaction in which he received $50,000 from Christopher Cioffi, that the transaction was disclosed to the Chapter 7 trustee, that there was "no way" to conclude he knew of his obligation to disclose the transaction, that even his attorney did not know this, and that there was insufficient evidence of fraudulent intent. (Doc. #12, pp. 4-5, 14-15.)

The Bankruptcy Court made the following findings of fact with regard to this transaction:

> Phillips and Cioffi were members of the same country clubs and played golf together.  They entered into a real estate investment arrangement that was entirely informal in nature--a "handshake" deal.  Phillips knew that Cioffi and other individuals were regularly involved in real estate investments and that several had been quite successful. Phillips asked Cioffi whether there were any deals he could invest in, and Cioffi offered him the opportunity to put $100,000 into a down payment on a real estate investment in Englewood.  Phillips did so in August 2005 on a handshake. [ ] The transaction was never documented, and Phillips's interest was never recognized on any of the papers documenting the purchase of the real property, or in the papers creating the L.L.C. that was created to hold the real estate. [ ]
>
> As the real estate market began to soften and his own financial situation began to decline, Phillips approached Cioffi and asked to be bought out of the deal. Cioffi agreed to buy him out for $50,000, and wrote him a check for that amount dated August 14, 2006. [ ] This transaction was not disclosed anywhere on the Debtor's schedules or statements. Specifically, it was not listed in the Debtor's SOFA as a transfer outside the ordinary course of business.

Phillips, 418 B.R. at 452 (internal record citations omitted).  The
Bankruptcy Court recognized that "[t]he Debtor has argued that this
failure to disclose is not a willful omission for two reasons.
First, he testified that the transaction was disclosed to the
Trustee. [ ] Secondly, the Debtor's bankruptcy counsel, Richard
Hollander ("Hollander"), indicated that he did not believe that
there was an appropriate place on the schedules and statements to
disclose this particular transaction."   Id. (internal record
citation omitted).

The Bankruptcy Court then made the following conclusions of
law as to this transaction:

> Within a year of the filing, the Debtor received a
> payment of $50,000 in exchange for his interest in a real
> estate investment controlled by Cioffi, known as the
> Englewood Project.  This transaction was a transfer of
> the interest of the Debtor within a year of the filing.
> The Debtor originally invested $100,000 in the Englewood
> Project. The Plaintiff has argued (although not pled)
> that the transfer of his interest in exchange for $50,000
> was a fraudulent transfer. However, the Plaintiff has
> failed to show that the transfer was made with fraudulent
> intent. The transfer appears, given the trends in the
> real estate market in west Florida, to have been a good
> business decision, and no evidence was presented
> indicating fraudulent intent at the time. However, the
> transfer was not disclosed in Question 10 of the SOFA or
> anywhere else in the Debtor's schedules or statements.
> The fact that this transaction was undocumented does not
> negate the Debtor's interest, or the obligation of
> disclosure.  The failure to disclose this transfer of the
> Debtor's interest in exchange for $50,000 was clearly
> material.  A single investment in a real estate project
> is clearly not within the ordinary course of the Debtor's
> business.

_Id._ at 463.   The Bankruptcy Court recognized the requirements that a false oath be intentional, fraudulent and material, _id._ at 461, and that while plaintiff had established several material omissions, "there must be a finding of actual intent to defraud on the part of the Debtor," _id._ at 464.   The Bankruptcy Court then stated:

> In this case, the Debtor has failed to disclose several substantial transfers and interests in property. The Court had the opportunity to observe the Debtor over the course of a two-day trial. The Debtor's testimony on these matters revealed a tendency to play "fast and loose" with his affairs. _See_ _In re Tully_, 818 F.2d at 110. It further appears that he chose to play "fast and loose" with his disclosure obligations. Considering all facts in this case and the testimony of the Debtor at trial, it is the Court's conclusion that these material omissions were willful. As such, they constitute false oaths and are cause for denial of discharge under § 727(a)(2)(A).
>
> The Debtor has argued in his defense that many of these omissions were made based on the advice of counsel. This Court has recently rejected this argument and does so again here. _See_ _In re Trafford_, 377 B.R. 387, 391 (Bankr. M.D. Fla. 2007). In this case, the facts and circumstances clearly warrant the finding that the Debtor had actual fraudulent intent when he omitted these interests and transfers. Therefore, he cannot shield this intent behind a plea that he was merely following the advice of his attorney.
>
> Secondly, the Debtor has argued that he met with the Trustee apart from the 341 meeting and explained several of these omitted transfers or interests. First, it is not clear from the testimony precisely what was disclosed to the Trustee. The meetings appeared generally to be an opportunity to open up the Debtor's books and records to the Trustee and provide explanation for any questions she might have. While this is certainly a good practice given the complexity of this case, it cannot substitute the requirement for full and accurate disclosure in the Debtor's schedules and statements. _See_ _In re Petersen_,

> 323 B.R. 512, 517 (Bankr. N.D. Fla. 2005) ("Debtors must
> make full and complete disclosures on their bankruptcy
> schedules, and it is not up to a debtor to decide upon
> the relevance or value of assets or information before
> including it on his or her schedules.").

Id. at 464.

The Court finds that the Bankruptcy Court has made no legal error or clearly erroneous finding of fact.  The transfer of interest and receipt of $50,000 was clearly required to be disclosed.  The Bankruptcy Court's credibility findings are well-supported in the record.  Indeed, even when a person's liberty is at stake, instead of simply his money, the trier of fact is permitted not only to disbelieve a witness, but "find that his demeanor and credibility suggested the opposite of what he testified."  United States v. Rojas, 349 F. App'x 467, 470 (11th Cir. 2009)(citing United States v. Deverso, 518 F.3d 1250, 1258 (11th Cir. 2008)).  The Bankruptcy Court correctly rejected the defense of reliance on advice of counsel.

> Generally, a debtor who acts in reliance on the advice of
> his attorney lacks the intent required to deny him a
> discharge of his debts. [ ]  However, the debtor's
> reliance must be in good faith. [ ]  The advice of
> counsel is not a defense when the erroneous information
> should have been evident to the debtor. [ ]  A debtor
> cannot, merely by playing ostrich and burying his head
> deeply enough in the sand, disclaim all responsibility
> for statements which he has made under oath.

In re Retz, 606 F.3d 1189, 1199 (9th Cir. 2010) (internal citations and quotations omitted).  The record supports the finding that disclosure to the Chapter 7 Trustee was both insufficiently

established and no excuse for omission.  After a *de novo* review of the transcripts and record, the Court finds that rejection of the defense was appropriate and supported by the evidence.

## C.  Payments to Attorneys

Phillips argues that the Bankruptcy Court's finding that payments to the attorneys were not required to be disclosed in Question 9 of the SOFA was correct, but its decision that disclosure was required in Question 10 "makes no sense."  (Doc. #12, p. 15.)  Debtor argues that Epic's Complaint did not allege a violation regarding Question 10, only Question 9, and the Bankruptcy Court should not have gone outside the pleadings to find an omission; that Question 10 references "business" or "financial affairs;" that payments to professionals like attorneys or accountants are generally within the ordinary course of an individual's financial affairs regardless of his business; that payments to attorneys was within the ordinary course of his personal affairs because those affairs involved a lot of litigation; that it is "simply not fair" to require such disclosure in Question 10 given the limiting reference in Question 9; that it was "common knowledge" that he was involved in numerous pieces of litigation; and that it was "patently unreasonable" to find deliberate omission and fraudulent intent.  (Doc. #12, pp. 5-6, 15-17).

The Bankruptcy Court made the following findings of fact concerning payment to attorneys:

Several payments were made by Phillips to attorneys in the year prior to the filing of his petition. Phillips paid $5,000 to the law firm of Grimes Goebel to represent him in an appeal, $10,000 to the attorney Mark Hildreth to represent him in litigation related to the Center case, $5,000 to the law firm of Allen, Kuehnle & Stovall to represent him in a case regarding a deficiency on an airplane, $3,500 to the attorney Brian Zinn to represent him in an adversary proceeding related to the Center case, and an unestablished amount to Len Thornton to represent him in another adversary proceeding related to the Center case. [ ]

The Plaintiff has argued that these payments should have been disclosed under Question 9 of the Debtor's SOFA. Question 9 instructs debtors to list all payments made, including payments to attorneys, "for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy" within a year of filing. The Debtor testified that none of these attorneys advised or represented him in the preparation of his own petition for bankruptcy relief or advised him on debt consolidation. [ ] While several of the attorneys are bankruptcy lawyers, the Debtor testified that their representation of him only related to litigation involving the Debtor in the Center case and various other forums. Based on this testimony, which was credible, the Court finds that none of these payments to attorneys were for advice or representation related to the Debtor's own bankruptcy filing or his personal debt issues, such as should be disclosed under Question 9.

Question 10 of the SOFA relates to transfers made within two years of filing outside the ordinary course of business. Under Question 10, a single payment to attorneys, Grant, Fridkin, Pearson, Athan & Crown, P.A., in the amount of $43,763.07, is disclosed. None of the payments to attorneys described above are listed under Question 10. In fact, these payments do not appear anywhere in the Debtor's schedules or statements.

Phillips, 418 B.R. at 453-54.  The Bankruptcy Court then made the following conclusions of law as to this issue:

> At trial, the Court received evidence that the Debtor failed to disclose $23,500 in payments to attorneys within the year prior to filing.  [n.4] The Plaintiff argued that these payments should have been disclosed under Question 9 of the SOFA. However, the Debtor credibly testified that these attorneys did not represent him in conjunction with his own bankruptcy proceeding. The Plaintiff has failed to present any evidence to credibly rebut that testimony. However, $23,500 in payments to attorneys qualifies as a transfer outside the ordinary course of business, in an amount that is clearly material. The Debtor's business was the charter air business, not litigation.
>
>> n.4  The Complaint alleged $42,000 in payments to attorneys, but the testimony only referenced $23,500, and no relevant exhibits were admitted.

Id. at 463 & n.4.

The Court finds that the Bankruptcy Court has made no legal error or clearly erroneous finding of fact.  As noted above, the Bankruptcy Court's credibility findings are well-supported in the record and fully support the finding of deliberate omission and fraudulent intent.  Phillips has cited no law which allows omission of information on the basis that a debtor believes it is "common knowledge."  Such a rule would render the SOFA virtually worthless to all involved in the bankruptcy process.  Nothing in the specific wording of Question 9 makes it unfair to require disclosure under a more generally worded question, such as Question 10.  The idea is to provide full and complete disclosures, not to allow a debtor to play word games in order to shield as much information as possible.

### D.  Deposit and Commercial Lease

Phillips concedes that the commercial lease was in his name, but asserts that he had no obligation to disclose his interest in it or the $3,090 security deposit because the lease was for the benefit of his company, the actual tenant.  Phillips relies upon a district court case almost 70 years old to suggest that failure to disclose such bare legal title cannot be a false oath.  Phillips also argues that given the surrounding facts it would be "unfair" to conclude he knew he was required to disclose his interest in the lease and deposit, and "unfair" to conclude that the omission was done with specific fraudulent intent.  (Doc. #12, pp. 6, 17.)

The Bankruptcy Court made the following findings of fact with regard to a commercial lease and security deposit:

> At some point, Midtowne Partners and Jet 1 Charter, Inc. ("Charter"), one of the Debtor's companies, negotiated a commercial lease.  Although the lease was for the benefit of Charter, and lease payments were made by that entity, Midtowne Partners wanted to have the lease put in the Debtor's name individually. [ ] The security deposit and first month's rent, in the amount of $3,090.00, were paid for by the Debtor. [ ] The Debtor testified that he was reimbursed for that payment by Charter. [ ] The Debtor's interest in the commercial lease and security deposit was not disclosed in the Debtor's schedules or statements.

Phillips, 418 B.R. at 454 (internal record citations omitted).  The Bankruptcy Court then made the following conclusions of law regarding this transaction:

> One of the Debtor's companies, Charter, uses leased commercial space. The lease is in the name of the Debtor individually, not in the name of Charter. The security deposit and first month's rent, in the amount of $3,090,

were paid out of the Debtor's personal account. The Debtor did not list his interest in the security deposit in his schedules. The Debtor argues that it is common for debtors to fail to list security deposits in their schedules, and that the security deposit had been refunded by Charter. Nevertheless, the Debtor is personally the party to the lease. The failure to disclose the Debtor's interest, whatever it may be, in this commercial lease and security deposit, was a material omission.

Id. at 463.

Debtor's only legal citation consists of In re Collins, 45 F. Supp. 990 (D.C.N.Y. 1942). The entirety of that court's discussion on the issue was as follows: "The sixth specification alleges that he made a false oath in that he failed to set forth in the schedules the ownership of a share of stock in the Nevin Company. The proof here fails because it appears that if at any time he had a bare legal title he had no equitable interest in the share of stock. The exception to the finding is sustained and the objection overruled." Id. at 992. Nothing in this case convinces the Court that the Bankruptcy Court erred in any fashion as to the lease or security interest in this case. The Court finds neither unfairness nor any error in the Bankruptcy Court's credibility findings and factual determinations regarding knowledge and intent as they relate to the lease and security deposit. The amount of the security deposit is not so de minimis as to excuse the required disclosure. In re Chalik, 748 F.2d at 618 ("The recalcitrant debtor may not escape a section 727(a)(4)(A) denial of discharge by

asserting that the admittedly omitted or falsely stated information concerned a worthless business relationship or holding."). Regardless of value, the omission was found to be material, which is the relevant inquiry. In re Olson, 916 F.2d 481, 484 (8th Cir. 1990)(value is not determinative).

**E.  Entertainment Expenses**

Phillips argues that the Bankruptcy Court should not have considered the entertainment expenses item because it was not pled in the Complaint, but was raised for the first time at the evidentiary hearing. Additionally, the Bankruptcy Court ruled at trial that such new matters would be admitted as evidence but would not provide independent support for a false oath, and the Court should not have changed that ruling. Additionally, given the testimony of his bankruptcy attorney, Phillips argues that it is "unfair" to find he deliberately omitted the information. (Doc. #12, pp. 6-7, 18.)

The Complaint broadly alleges the failure to "accurately disclose the true extent of the Defendant's assets, liabilities and credit facilities", Adv. Doc. #1, ¶ 5p. At trial, the Bankruptcy Court permitted Epic to present evidence relating to facts not specifically plead in the Complaint in order to "generally paint the picture of the Debtor's acts." In re Phillips, 418 B.R. at 451. This included evidence as to the inaccuracy of the entertainment expenses as to the "totality of the circumstances",

-24-

or "overall picture".   (Adv. Doc. #174, pp. 188-93.)   Despite allowing such evidence, the Bankruptcy Court consistently denied leave to amend the complaint to include additional factual allegations or to conform to the evidence.   Id. at 451 & n.1, 459-60.   As to the entertainment expenses, the Bankruptcy Court stated that they were "just big picture items.   They are not stand-alone items that could support the denial of the discharge."   (Adv. Doc. #174, p. 193.)

The Bankruptcy Court made the following findings of fact as to entertainment expenses:

> The Debtor listed $0 in entertainment expenses on his Schedule J. It is not contested, nor could it be, that the Debtor spent money on entertainment expenses in the year prior to filing. [ ] The Debtor's attorney testified that normally he does not list any amount for entertainment expenses in a Chapter 7 case, and that it did not matter in this case because the net income was already a negative number. [ ] Furthermore, many of the Debtor's entertainment expenses were being paid for by the Debtor's businesses, and Hollander also testified that he would not include them for that reason. [ ] The Court disagrees with Hollander's conclusion that entertainment expenses need not be disclosed on Schedule J where the Debtor's disposable income is already a negative number. It is clear that the Debtor had significant entertainment expenses that were not listed in Schedule J among his other monthly expenses.

Phillips, 418 B.R. at 453 (internal record citations omitted).   In the Conclusions of Law section, the Bankruptcy Court stated: "Finally, the Debtor listed $0 in entertainment expenses on his Schedule J.   This statement was clearly false and material."   Id. at 463.

As discussed before, there is no unfairness in the credibility findings made by the Bankruptcy Court.  The Bankruptcy Court's decision to admit the entertainment expense evidence is reviewed under an abuse of discretion standard, In re Walker, 515 F.3d 1204, 1213 (11th Cir. 2008), and a bankruptcy judge has broad discretion in this regard, Ramos v. Liberty Mut. Ins. Co., 615 F.2d 334, 340 (5th Cir. 1980).  There was clearly no abuse of discretion in the admission of this evidence.  The Bankruptcy Court, however, stated that it would not consider the incorrect amount for entertainment expenses as a stand-alone omission, but only for credibility purposes.  Its decision, however, included the entertainment expenses as one of the five specific false oaths upon which the denial of discharge was based.  Having decided repeatedly that the entertainment expenses would not form a substantive basis for denial of a discharge, the Bankruptcy Court erred by doing the contrary.  The Court finds that the denial of a discharge based on this false oath was erroneous.

**F.  Collateral Estoppel/Res Judicata**

Phillips argues that because the other plaintiffs in the adversary Complaint dismissed their identical claims with prejudice before trial, Epic is precluded from pursuing its claims against Phillips.  Phillips argues that a dismissal with prejudice is an adjudication on the merits, and co-plaintiffs were privies of Epic.

Phillips argues that a dismissal by any of the co-plaintiffs estops Epic from pursuing it claim. (Doc. #12, pp. 19.)

Debtor's argument for collateral estoppel and *res judicata* in this case is, at best, without merit. Phillips essentially takes the position that if any plaintiff dismisses his or her claim, no other plaintiff may proceed. He cites no law supporting such a drastic position, and there is none. *Res judicata*, or claim preclusion, bars the filing of a claim that was raised or could have been raised in prior litigation where (1) there is a final judgment on the merits; (2) rendered by a court of competent jurisdiction; (3) that involved identical parties; and (4) involved the same cause of action. Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1238 (11th Cir. 1999). Collateral estoppel, or issue preclusion, "operates more narrowly to prevent re-litigation of issues that have already been decided between the parties in an earlier lawsuit." Brown v. R.J. Reynolds Tobacco Co., 611 F.3d 1324, 1332 (11th Cir. 2010). There is no "prior litigation" or "earlier lawsuit," and therefore no *res judicata* or collateral estoppel as to EPIC. The claims of Epic were not deemed adjudicated on the merits by the voluntary dismissal of co-plaintiffs claims.

## IV.

In summary, the Court finds no legal or factual error with regard to the Bankruptcy Court's determinations concerning transfer

of debtor's interest in the Englewood Project to Cioffi for $50,000, the $23,500 paid to attorneys, and debtor's interest in a commercial lease and security deposit involving Jet Charter.  The Court finds that the Bankruptcy Court erred in finding that the various transfers to and from Debtor's corporations and the listing of $0 in entertainment expenses constituted false oaths.  The bankruptcy court correctly held that Phillips made false oaths concerning debtor's interest in the Englewood Project to Cioffi for $50,000, the $23,500 paid to attorneys, and debtor's interest in a commercial lease and security deposit involving Jet Charter, that the false oaths related to material facts, and that they were made knowingly and fraudulently.  Therefore, the Court affirms the bankruptcy court's denial of Phillips's discharge pursuant to § 727(a)(4)(A).[7]

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.   Appellant's Request for Oral Argument (Doc. #24) is **DENIED.**

2.   The Final Judgment (Doc. #1-3) is **AFFIRMED** on the basis of three of the five false oaths found by the Bankruptcy Court.

---

[7]Denial of a discharge can be appropriate with only a single false oath.  See, e.g., In re Grondin, 232 B.R. 274 (B.A.P. 1st Cir. 1999)(collecting cases)(all that is required under the plain language of the statute is a single false oath or account); In re Stevens, 250 B.R. 750 (Bankr. M.D. Fla. 2000)(denying discharge based on concealment and fraudulent omission of an ownership interest in one property).

3.   The Clerk shall enter judgment accordingly, transmit a copy of this Opinion and Order and the Judgment to the Clerk of the Bankruptcy Court, terminate the appeal, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___29th___ day of March, 2011.

_____
JOHN E. STEELE
United States District Judge

Copies:
Counsel of record